[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15148
Non-Argument Calendar
_____

BIA No. A76-999-987

YANER LI,
a.k.a. Satoshi Wakaizumi,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(June 18, 2007)**

Before ANDERSON, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

This petition for review of a decision of the Board of Immigration Appeals

requires us to determine whether the Board abused its discretion when it denied a motion to reopen removal proceedings. Yaner Li, a native and citizen of China and mother of two children, moved the Board to reopen her removal proceedings to file an untimely asylum application based on undisputed and previously unavailable evidence that Chinese officials in her home village in the Fujian Province are enforcing a one-child policy by forced sterilization. Notwithstanding Li's evidence, the Board found that Li failed to prove either that conditions in China had changed or that parents of foreign-born children face the same persecution as parents of native children. We grant Li's petition for review of the denial of her motion to reopen, and we vacate and remand for further proceedings.

## I. BACKGROUND

Li is a native of Lianjiang, in the Fujian Province of China. On May 1, 2001, she presented a fraudulent Japanese passport to enter the United States. Since her arrival, Li has married an American citizen and given birth to two children.

On May 16, 2001, the Immigration and Naturalization Service charged Li with removal under the Immigration and Nationality Act because she did not possess a valid entry document. The notice stated that an asylum officer had found that Li presented a credible fear of persecution or torture. In July 2004, a notice of hearing was mailed to Li, but she did not appear at the hearing on December 15,

2

2004. The Immigration Judge found that Li had abandoned any possible application for asylum and ordered her removed.

Li filed a motion to reopen her case on the ground that the notice was mailed to the wrong address. The Immigration Judge denied the motion. On January 12, 2006, the Board affirmed.

On April 24, 2006, Li filed a motion to reopen her removal proceedings based on changed conditions in China and a motion for leave to file an asylum application on the basis of changed country conditions and changed personal circumstances. In support of her motions, Li offered previously unavailable evidence that officials in the Fujian Province of China had intensified their persecution of parents of two children. Li presented her own affidavit, which reported second-hand accounts of forced sterilization and abortion in Lianjiang in 2005, and her mother's affidavit, which reported that family planning enforcement had become more severe in Lianjiang. Li's mother attested that sterilizations were more common than before, and Li's mother stated that three women from Lianjiang were forcibly sterilized after the birth of each woman's second child.

Li also offered the Country Reports of the U.S. State Department for 2003, 2004, and 2005, which described frequent human rights abuses by local officials. The report for 2003 stated that the one-child policy was more relaxed in rural areas but that a "parent [of more than one child] was usually pressured to undergo

3

sterilization." It also concluded that provincial "regulations requiring sterilization in certain cases, or mandatory abortion, are not contradicted by the new [national] law." The 2004 and 2005 reports, which were unavailable at Li's removal hearing in 2004, stated that government officials use coercive fines and destruction of property to coerce women with multiple children to undergo sterilization and that "one parent was often pressured to undergo sterilization." The 2004 and 2005 Country Reports explained that in Fujian Province, the local government required birth permits and employed "unspecified 'remedial measures' to deal with out-of-plan pregnancies." The 2005 Country Report stated that, notwithstanding a purported national policy to the contrary, forced sterilization and abortion were prevalent in rural provinces where local officials may abuse their power without punishment. The 2005 report also described forced sterilization of several thousand people in the Shandong Province and the detention of the human rights activist who exposed the practice.

Li also submitted the 2005 Annual Report of the Congressional-Executive Commission on China and two newspaper articles. The report stated that the Chinese government had an official policy of using coercive fines to enforce the one-child rule but that some local officials used physical coercion. The newspaper articles from August and September 2005 described a campaign of forced abortions and sterilizations in the Shandong Province.

4

Finally, Li submitted evidence to establish that she, as a mother to children born in the United States, had an objective fear of future persecution upon removal to China. She submitted the 2005 Consular Information Sheet of the U.S. State Department, which stated that the Chinese government considers children born to Chinese nationals abroad to be Chinese citizens for the purposes of ingress and egress from the country. She also submitted the 2002 congressional testimony of John Aird, an expert on Chinese family planning policy, that Chinese parents of foreign-born children are subject to the same coercion and penalties as parents of native children.

The Board denied Li's motion to reopen and her motion for leave to file an untimely application for asylum. The Board found that the motion to reopen was filed after the 90-day deadline for filing a motion to reopen. Although it found that Li's personal circumstances had changed by the birth of her two children, the Board found that Li's evidence did not establish an exception to the 90-day deadline based on changed country circumstances. The Board discounted the evidence that Li would be persecuted upon her removal to China because it found insufficient evidence that Chinese parents of foreign-born children would be sterilized to state a prima facie case for asylum or withholding of removal. The Board discounted Dr. Aird's testimony because it was old information, was not specific to Li's case, and he was deceased and could not testify in any possible

removal proceedings. The Board also determined that the anecdotal evidence of sterilization in Fujian Province established "only that the family planning policies are enforced generally in her hometown and that they were enforced specifically against the person identified." The Board denied leave to file an untimely application for asylum because it determined, with its emphasis, that "section 208(a)(2)(D) of the [INA] . . . does not pertain to untimely claims by aliens under final orders based on changes arising outside the country of nationality or removal."

## II. STANDARDS OF REVIEW

We review the denial of a motion to reopen removal proceedings for abuse of discretion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001). To the extent that the decision of the Board was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir.2001). "[R]eview of the BIA's [statutory] interpretation is informed by the principle of deference articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." Castillo-Arias v. U.S. Att'y. Gen., 446 F.3d 1190, 1195 (11th Cir. 2006).

## III. DISCUSSION

Li challenges the decision of the Board on two grounds. First, she argues that the Board abused its discretion when it denied her motion to reopen

6

proceedings for failure to establish changed circumstances or a prima facie case of eligibility for asylum.  Second, Li argues that the Board denied her motion for leave to file an untimely application for asylum based on an erroneous interpretation of the relevant statute.  We address each issue in turn.

### A.  The Board Abused Its Discretion When It Denied Li's Motion to Reopen Her Removal Proceedings.

Li seeks to reopen her removal proceedings to file an untimely application for asylum and apply for withholding of removal under the Immigration and Naturalization Act.  To qualify for asylum or withholding of removal, an applicant must establish that she has a well-founded fear that she will be persecuted if removed to her home country on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. §§ 1101(a)(42), 1158(b)(1), 1231(b)(3).  "[A] person who has a well founded fear that he or she will be forced to [abort a pregnancy or to undergo involuntary sterilization] or [be] subject to persecution [for failure or refusal to undergo such a procedure] shall be deemed to have a well founded fear of persecution on account of political opinion." Id. § 1101(a)(42)(B).

A motion to reopen removal proceedings must be filed no later than 90 days after the final administrative decision, but this deadline does not apply if the motion to reopen is filed based on evidence of changed circumstances in the

7

country of the movant's nationality that could not have been presented at the previous hearing. Id. § 1229a(c)(7)(C). It is within the discretion of the Board to deny a motion to reopen for at least three reasons: "1) failure to establish a prima facie case [of eligibility for asylum or withholding of removal]; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar, 257 F.3d at 1302.

Li concedes that she filed her motion to reopen after the 90-day deadline, but she argues that she presented evidence of changed circumstances that was not available at her original removal proceedings. We agree. Li submitted her own affidavit, in which she attested to a fear of persecution based on recent second-hand reports of a policy of sterilization in her home province. She also presented her mother's affidavit that local officials in her hometown had begun recently to sterilize forcibly women with two or more children. Li's mother attested to personal knowledge of three women who were forcibly sterilized after the births of their second children. The Board found neither Li's affidavit nor her mother's affidavit incredible. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (admonishing the Board to make "clean" credibility findings if credibility is dispositive).

8

Li's other evidence corroborated her anecdotal evidence of a change in policy in her province and substantiated her fear that local officials in Fujian have the incentives and discretion to sterilize women with more than one child. Cf. Guo v. Gonzales, 463 F.3d 109, 112-13 (2d Cir. 2006) (remanding to Board to reconsider whether there is an official policy of sterilization in Fujian Province). The State Department reports state that the "enforcement [of birth control policy] varied significantly from place to place" because local officials "remained subject to rewards or penalties based on meeting the population goals set by their administrative region." Consistent with Li's assertions, the 2005 Country Report also concluded that forced abortion and sterilization continues in certain regions in China, despite the national policy against it: "[I]mplementation of the [national birth] policy by local officials resulted in serious violations of human rights. Reports of forced sterilizations and abortions, in violation of the national law, continued to be documented in rural areas." Finally, the 2005 report and the newspaper articles also record the recently-discovered policy to sterilize thousands of women in Shandong Province, which led to the arrest of the activist who uncovered the policy but not punishment of the local officials responsible for the policy.

The finding of the Board that Li's evidence involved specific instances of forced sterilization, not a new policy, is nonsensical. The issue before the Board

9

was whether Li's evidence was material and previously unavailable evidence of changed conditions in China. See 8 U.S.C. § 1229a(c)(7)(C)(ii). Li's evidence of a recent campaign of forced sterilization in her home village, evidence consistent with the conclusion of recent government reports, clearly satisfied the criteria for a motion to reopen her removal proceedings.

The Board also made the incomprehensible assertion that Li's motion failed because "foreign law is a matter to be proven by the party seeking to rely on it." This statement underscores the extent to which the BIA misconstrued the basis for Li's motion to reopen proceedings. Li did not argue that China had passed a new national law requiring sterilization; she argued that local officials had begun a campaign of extra-legal persecution of women with two children. That Li could not prove a specific "foreign law" was irrelevant.

The Board erroneously determined alternatively that Li failed to establish a policy of persecuting women with two foreign-born children, as opposed to native children, and erroneously assumed that Li's alleged persecutors would make a similar distinction. The Board has relied on this distinction before. Although cited by neither party, in Huang v. INS, the Board reversed the decision of an Immigration Judge to grant asylum to a Chinese applicant on the basis of a government report that implied that couples who returned to China with foreign-born children would not be subject to adverse treatment. 421 F.3d 125, 129 (2d

10

Cir. 2005).  The Second Circuit concluded that the distinction between native and foreign-born children was supported by substantial evidence in that record because the Board "was entitled to rely on [a country report], so long as in doing so it did not overlook any contradictory evidence directly presented by the petitioner."  Id. at 129.

In Li's appeal, the Board invoked this distinction despite the absence of any evidence in this record, in contrast with Huang, that either the Chinese national government or local Fujian officials distinguish between parents of children born abroad and parents of children born in China.  In fact, the only evidence in this record supports the opposite conclusion; the consular information sheet established that, for some purposes at least, the Chinese government considers foreign-born children of Chinese nationals equivalent to children born in China.  At least two of our sister circuits have determined that the Board has made this error before.  See Lin v. U.S. Dep't of Justice, 468 F.3d 167, 168 (2d Cir. 2006), modified, 473 F.3d 48 (2d Cir. 2007) (rejecting the distinction in the light of evidence presented by applicant in Guo, 463 F.3d 109); Yang v. Gonzales, 427 F.3d 1117, 1119-23 (8th Cir. 2005) (rejecting the distinction when undermined by applicant's evidence).  In the light of this record, it was arbitrary and capricious for the Board to rely on this

factual distinction to determine that Li failed to establish a prima facie case for asylum or withholding of removal in resolving Li's motion to reopen.

B. *We Need Not Review the Interpretation of the Asylum Statute by the Board.*

An application for asylum filed outside the one-year time limit may be considered if the applicant "demonstrates to the satisfaction of the Attorney General the existence of changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D). Ordinarily, "[n]o court shall have jurisdiction to review any [changed circumstances] determination of the Attorney General," id. § 1158(a)(3), but the REAL ID Act provides that "[n]othing . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section," id. § 1252(d), quoted in Chacon-Botero v. U.S. Att'y. Gen., 427 F.3d 954, 957 (11th Cir. 2005).

It is unclear whether the Board found Li's application for asylum to be untimely. Li argues that the Board denied her untimely application for asylum based on an erroneous "conclusion of law" over which we have jurisdiction. The government argues that "[t]he BIA's brief discussion of the one-year time limit

application to asylum application . . . should not be construed as the basis of the BIA's decision."

We conclude that, because we have vacated the BIA's denial of Li's motion to reopen, we need not address whether the BIA reached a "conclusion of law" as an alternative basis for its decision. The Board denied Li leave to file an untimely application because the Board concluded that "section 208(a)(2)(D) of the [INA] . . . does not pertain to untimely claims by aliens under final orders based on changes arising outside the country of nationality or removal." There are many ways to interpret this sentence but, after supplemental briefing, both parties contend that, at most, the BIA concluded that an alien under a final order of removal must first reopen her removal proceedings before filing an untimely application for asylum based on changed personal circumstances. But see Guan v. Bd. of Immigration Appeals, 345 F.3d 47, 49 (2d Cir. 2003) (suggesting that an untimely asylum application based on changed personal circumstances may be filed without reopening proceedings); 8 U.S.C. § 1158(a)(1) ("Any alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section."). Regardless of the merits of that interpretation, we understand the decision of the Board to mean that it will consider

13

Li's untimely application for asylum on remand because Li will no longer be under "final orders."

## IV.  CONCLUSION

We conclude that the Board abused its discretion when it refused to reopen Li's removal proceedings after she established a prima facie case of eligibility for asylum and withholding of removal.  We **GRANT** the petition.  We **VACATE** the order that denied Li's motion to reopen and **REMAND** for further proceedings.