[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 11, 2008
THOMAS K. KAHN
CLERK

No. 07-15781
Non-Argument Calendar
_____

BIA No. A77-024-030

SHAO YU YUAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(September 11, 2008)**

Before BLACK, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Shao Yu Yuan petitions us to review the Board of Immigration Appeals' (BIA's) decision denying her motion to reopen and affirming the Immigration Judge's (IJ's) order of removal, denial of asylum, withholding of removal, and relief pursuant to the Convention Against Torture (CAT) . She asserts the BIA abused its discretion in denying her motion to reopen as she proffered sufficient evidence of changed country conditions in China, specifically, more aggressive enforcement in Fujian Province of China's "one-child" policy. In particular, she contends she has submitted similar evidence as that in *Li v. U.S. Att'y Gen.*, 488 F.3d 1371 (11th Cir. 2007), which held the BIA abused its discretion in denying a motion to reopen as the petitioner had established changed country conditions in the form of more aggressive enforcement of China's family planning law. In addition, she contends she is permitted to file a successive asylum application based on changed personal circumstances under 8 U.S.C. § 1158(a)(2)(D). Further, she asserts she may file a motion to reopen at any time pursuant to 8 U.S.C. § 1229a(c)(7)(C)(ii), as she did not receive proper notice of her original hearing. Finally, she contends even if her request for asylum is untimely she is still entitled to a hearing on her claims of withholding of removal and CAT relief.

"We review the BIA's denial of a motion to reopen for an abuse of discretion." *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005). "[R]eview is limited to determining whether there has been an exercise of

2

administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Id.* (quotations omitted). A party may only file one motion to reopen removal proceedings, and that motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A), (B). A motion to reopen must be filed no later than 90 days after the final administrative decision. 8 C.F.R. § 1003.2(c)(2). The 90-day time limit does not apply if the motion to reopen is filed on the basis of changed circumstances in the country of the movant's nationality. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). To meet this exception, a movant must show material evidence that was not available and could not have been discovered or presented at the previous hearing. *Id.* Moreover, the BIA "has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. 1003.2(a).

We have held that: "[a]t a minimum, there are at least three independent grounds upon which [the BIA] may deny a motion to reopen: (1) failure to establish a prima facie case; (2) failure to introduce evidence that was material and previously unavailable; and (3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001). Forced abortions and sterilizations are considered persecution, specifically:

A person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B).

We addressed a case with a similar factual background in *Li*, 488 F.3d 1371. Li was a native of Lianjiang, Fujian Province, China, who came to the United States without valid entry documents but was found to have a credible fear of torture or persecution. *Id.* at 1372. Li missed her hearing date and was found removable. *Id.* Li filed a motion to reopen in 2006 based on changed conditions, offering evidence that officials in Fujian Province had intensified their persecution of parents with two children. *Id.* at 1372-73. The evidence included Li's affidavit of secondhand accounts of forced sterilization and abortion, her mother's affidavit, the 2003, 2004, and 2005 Country Reports, 2002 congressional testimony from John Aird–a specialist on China's population policy, newspaper articles, a 2005 Consular Information Sheet, and evidence that she was the mother of children born in the United States. *Id.* at 1373. We vacated the BIA's denial of her motion to reopen stating "[t]he issue before the Board was whether Li's evidence was material and previously unavailable evidence of changed conditions in China. Li's

4

evidence of a recent campaign of forced sterilization in her home village . . .

clearly satisfied the criteria for a motion to reopen her removal proceedings." *Id.* at

1375 (citation omitted). We also rejected the BIA's distinction between foreign-

born and Chinese-born children. *Id.* at 1376.

While there are some minor differences between Yuan's case and *Li*, the

underlying factual background and evidence cited are very similar. Yuan has

presented evidence of a recent campaign of forced sterilization in her home village

in China. Both Yuan and Li are from Lianjiang County, Fujian Province. Yuan,

like Li, provided an affidavit of secondhand accounts of forced sterilizations and

more aggressive enforcement of China's family planning law during the same time

period. Yuan's affidavit stated she has been told by her family that village cadres

had recently held a number of meetings to discuss China's 2002 Family Planning

Law and the many pregnant women in her hometown were being taken away to

undergo abortions and forced sterilizations. She also gave examples of two women

who were recently forcibly sterilized after giving birth to a second child. The BIA

did not find Yuan's testimony regarding more aggressive enforcement incredible,

and did not specifically address her affidavit. *See Yang v. U.S. Att'y Gen.*, 418

F.3d 1198, 1201 (11th Cir. 2005). Contrary to the Government's claim, Yuan also

cited the 2005 Country Report discussed in *Li*, which referenced a recently

5

discovered program of forced sterilization of thousands of women in another province.

Yuan also proffered evidence that foreign-born children are treated the same as those born in China, including the Consular Information Sheet similar to the one cited in *Li* that states China considers the foreign born children of Chinese nationals solely as Chinese citizens. She also provided evidence, in Aird's affidavit, of a 2003 official correspondence from Fujian provincial family planning officials stating that Chinese nationals whose children were born abroad will be subject to family planning enforcement upon return. The BIA did not address the reference to this correspondence directly,[1] which seems to contradict, along with her affidavit, the BIA's finding that "[Yuan] has not demonstrated that she will be sterilized or otherwise subjected to coercive population control measures due to the birth of her United States citizen children."

Most of the cases relied upon by the BIA are not persuasive because they predate *Li*. In its opinion, the BIA rejected the documents cited by Yuan stating it had addressed the same evidence in four previous BIA decisions in which it held this evidence did not show a material change in conditions in China. However, a review of the decisions cited indicates three of the four decisions were issued

---

[1] In generally rejecting the evidence proffered by Yuan, the BIA cited a case which found this document had a limited application. *See In Re S-Y-G-*, 24 I&N Dec. 247, 254-55 (BIA 2007).

before *Li* where this Court found much of the evidence discussed to be material. In addition, some of these decisions rely on documents not included in the record in this case, including the 2006 and 2007 Country Reports.

The Government's attempt to distinguish *Li* is unpersuasive. The Government asserts the present case can be distinguished from *Li* citing the lack of firsthand testimony, that she did not submit the 2005 Country Report, that Yuan's statements at her original detention are similar those made in her motion to reopen, and that there are indications in the evidence that China's policy has not changed. First, the Government is correct that Yuan did not submit any firsthand accounts as evidence. However, Yuan describes information given to her by her family in her own affidavit, and it appears the firsthand account submitted in *Li* was only one piece of evidence considered by this Court and was not dispositive, in and of itself. *See Li,* 488 F.3d at 1373. Second, while the 2005 Country Report is not included in the record, Yuan does cite to relevant portions of the report in her brief to the BIA on remand, which the Government did not challenge as inaccurate. Also, Yuan's original motion to reopen with the BIA predates the 2005 Report. Third, Yuan testified in 2000 she was forced to get an abortion because she was unmarried. In 2005, she stated officials had become more aggressive in forcing sterilization of women who had given birth to more than one child. Contrary to the Government's argument, it does not necessarily follow that this testimony shows

7

no change in enforcement, as Yuan's testimony in 2000 related to forced abortions for unmarried women, while her more recent statements address forced sterilization of married women with more than one child. Finally, the Government argues statements in Aird's affidavit undermine the argument the policy has changed as he stated "the basic policy has remained largely unchanged." Reading Aird's testimony in context, he is referring to China's one-child policy and is not discussing the level of enforcement of that policy, the alleged changed conditions in this case. In fact, in the preceding sentences, Aird indicated the enforcement of China's family planning program has changed over time stating "[a]t times high pressure campaigns mounted to implement this program have backfired, evoking such strong popular resentment that the authorities have had to ease the pressures temporarily. But in each instance when the softer approach led to rising birth rates, the pressure was resumed. Three cycles of relaxing and tightening have occurred since the late 1970's." Thus, the testimony cited by the Government arguably supports the contention that enforcement of China's family planning law can vary.

Lastly, Yuan's challenge to the distinction the BIA allegedly made between foreign-born children and those born in China with regard to the enforcement of family planning laws is unpersuasive. Unlike in *Li*, it does not appear the BIA found Yuan would be treated differently because her children were born in the United States, but instead found the birth of her children in the United States, in

8

and of itself, did not constitute changed country conditions but changed personal conditions. There does not appear to be any language in *Li* that would indicate the BIA erred in making this distinction.

While there are some minor differences between Yuan's case and *Li*, the underlying factual background and evidence cited are very similar. Thus, Yuan has presented material information that was previously unavailable of changed conditions in her home village regarding an increase in forced sterilization for women with two children and a *prima facie* case that she would be eligible for asylum or withholding of removal. As such, the BIA abused its discretion in denying Yuan's motion to reopen, especially considering the BIA never mentioned *Li*, much less applied it, even though it was issued five months before the BIA's decision.

We grant the petition and vacate the order denying Yuan's motion to reopen and remand to the BIA for further proceedings.[2]

**PETITION GRANTED. ORDER VACATED and REMANDED.**

---

[2] Because we have vacated the BIA's denial of Yuan's motion to reopen, we need not address Yuan's remaining arguments.

9