[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 28, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10503
Non-Argument Calendar

_____

Agency No. A078-207-329

RU ZHENG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 28, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Ru Zheng, a native and citizen of China, petitions for review of the Bureau of Immigration Appeals' ("BIA's") order denying her untimely motion to reopen, 8 C.F.R. § 1003.2(a). Zheng argues that the BIA abused its discretion by (1) denying her untimely motion to reopen because she failed to show the exception of changed country conditions in China and (2) failing to consider whether she was eligible for relief under the Convention Against Torture ("CAT"). For the reasons set forth below, we deny Zheng's petition for review.

## I.

Zheng, a native and citizen of China, entered the United States on September 4, 2000 on a K-1 non-immigrant visa, with authorization to remain in the country until December 3, 2000. On November 6, 2002, Zheng submitted an application for asylum, withholding of removal, and relief under the CAT, alleging persecution on account of her political opinion.

Zheng supported her application with an affidavit, in which she explained that, while living in China, she became pregnant with the child of a man named Bin Lin. Zheng and Lin were not legally old enough to marry or have a child, and, after being pressured by the government, Zheng had an abortion. After the abortion, the government wanted to insert an intrauterine device ("IUD"). Zheng arrived in the United States on September 4, 2000 and has remained here, fearing that the Chinese government would force her to insert an IUD against her will if

2

she returned to China.

At Zheng's removal hearing, Zheng testified that she was born in Changle City, China and was not married and had no children. Zheng discovered that she was pregnant with Lin's child in March 1999 and hid in her parents' house in Changle City, fearing that she would be forced to undergo an abortion. On May 3, 1999, family planning officers came to Zheng's home, arrested her, and took her to Changle City Hospital, where she was forced to have an abortion. Family planning officials told Zheng that she should return to the hospital when her health improved to have an IUD inserted.

In June and July 1999, officials followed up on their request that Zheng receive an IUD, but Zheng told the officials that her health had not yet recovered. Officials came back in September, but Zheng had returned to school in Fuzhou City, and Zheng's parents told officials that she would have the IUD inserted after her schooling was finished. In April 2000, Zheng became engaged to Jiang Yah Ming Hu, who petitioned for Zheng to receive a K-1 Visa. Zheng received the visa and came to the United States on September 4, 2000. She stated that she could not return to either Changle City or Fuzhou City, because she had failed to report to hospitals in both cities, and officials would force her to have an IUD inserted.

On October 24, 2003, the IJ found that Zheng's application for asylum was untimely filed and, therefore, would not be considered. With regard to Zheng's

3

claim for withholding of removal, the IJ found that Zheng's testimony and documentary evidence suffered from credibility problems and discrepancies. The IJ denied Zheng's application for withholding of removal and CAT relief, based on these credibility problems and the fact that Zheng failed to prove that she would continue to fear persecution if she returned to Fuzhou City. On April 22, 2005, the BIA affirmed without opinion. We subsequently denied, in part, and dismissed, in part, Zheng's petition for review.

On May 28, 2008, Zheng filed with the BIA the present motion to reopen her asylum case and stay removal based on changed country conditions. Zheng asserted that her personal situation had changed significantly since 1999, because she had married and given birth to two children in the United States. She also asserted that conditions in Fujian Province China had changed "for the worse since 2000."

Zheng submitted the following documentary evidence with her motion to reopen. Zheng's marriage certificate, which showed that she was married in the United States on June 15, 2006. Two birth certificates, which indicated that Zheng gave birth to two children in the United States, one in 2006, and one in 2008. A letter, dated December 12, 2007 and signed by Shizhu Zheng, which stated that she was Zheng's neighbor in China and that family planning officials had required her to have an IUD implanted three months after giving birth to her eldest son, on

4

March 2, 2000, and a sterilization surgery after giving birth to her second child in March 2003. A photocopy of a "Certification of Family Planning Surgery of Changle City," which stated that the hospital performed sterilization surgery on Zheng Shizhu on April 7, 2003.

The 2007 Country Report stated that China's "birth limitation policies retain harshly coercive elements in law and practice." It noted that enforcement of the birth limitation policies varies significantly from place to place and that "[t]he one-child limit was more strictly applied in the cities" than in rural areas, including towns of under 200,000 persons. The report noted that several provinces required termination of pregnancies that violated provincial family planning regulations, whereas 10 provinces, including Fujian province, required "unspecified 'remedial measures' to deal with out-of-plan pregnancies." It also noted that local governments set and assessed social compensation fees, which had to be paid by couples with an unapproved child and "sometimes reached 10 times a person's annual disposable income." For China generally, the report noted that, "[i]n the case of families that already had two children, one parent was often pressured to undergo sterilization . . . [and] [t]he penalties sometimes left women with little practical choice but to undergo abortion or sterilization." The report further stated that "[t]he law prohibits the use of physical coercion to compel persons to submit to abortion of sterilization. However, intense pressure to meet birth limitation

5

targets set by government regulations resulted in instances of local birth-planning officials using physical coercion to meet government goals."

The 2002 Country Report on China stated that the country's "new Population and Family Planning Law, the country's first formal law on this subject, entered into force on September 1 [2002]." It stated that the law was intended to standardize the implementation of the birth limitation policy. The law required the use of "quotas or other measures to limit the total number of births in each county," required "couples to employ birth control measures," and "couples who have an unapproved child to pay a 'social compensation fee,'" and "grant[ed] preferential treatment to couples who abide by the birth limits." It noted that "[i]n the cases of families who already have two children, one of the parents is 'encouraged' to undergo sterilization." The report noted that "the number of couples undergoing sterilization procedures after giving birth to two children increased significantly in at least one province" and "[i]n another province, rules state that 'unplanned pregnancies must be aborted immediately.'" However, these two provinces were not identified by name. It explained that, although "Central Government policy formally prohibit[ed] the use of physical coercion to compel persons to submit to abortion or sterilization[,] . . . intense pressure to meet birth limitation targets set by government regulations has resulted in instances in which local birth planning officials reportedly have used physical coercion to meet

6

government goals."

The BIA denied Zheng's motion to reopen and her request for a stay of removal. It found noted that Zheng's motion was submitted well after the 90-day deadline set forth in 8 U.S.C. § 1229a(c)(7)(C)(i) and, therefore, the motion could be granted only if Zheng showed "changed country conditions arising in [China]." It acknowledged our decision in Li v. U.S. Att'y Gen., 488 F.3d 1371 (11th Cir. 2007), holding that "an alien's undisputed evidence of a recent campaign in her home village in China of forced sterilization warranted reopening based on changed country conditions;" however, it found that Zheng failed to support her motion with such undisputed evidence. Id. at 1375. The BIA noted that the letter from Zheng's neighbor and the sterilization certificate were black and white copies and had not been authenticated. It also pointed out that the IJ had previously found Zheng's testimony and evidence to lack credibility, and, in light of this, it "decline[d] to accord much weight to the respondent's non-authenticated evidence submitted with her motion to reopen." It determined that Zheng's "evidence [wa]s inadequate to establish a change in circumstances or country conditions 'arising in the country of nationality' so as to create an exception to the time and number limitation for filing a late motion to reopen to apply for asylum" and denied her motion to reopen and her request for a stay of removal.

## II.

We review the BIA's denial of a motion to reopen for an abuse of discretion. Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). Review "is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (internal quotations omitted). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

A party may file only one motion to reopen removal proceedings, and that motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A), (B). Generally, a motion to reopen must be filed no later than 90 days after the final administrative decision. 8 C.F.R. § 1003.2(c)(2). However, the 90-day limit does not apply if the motion to reopen is filed on the basis of changed circumstances in the country of the movant's nationality. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). To meet this exception, a movant must show material evidence that was not available and could not have been discovered or presented at the previous hearing. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). We have held that previously unavailable evidence of a recent campaign of forced sterilization in the petitioner's home province is sufficient to satisfy the changed circumstances requirement in an

8

untimely motion to reopen.  <u>Li</u>, 488 F.3d at 1375.

**III.**

*Denial of Untimely Motion to Reopen*

Zheng first argues that the BIA erred in requiring her documentary evidence to be authenticated under 8 C.F.R. § 1287.6.  Zheng is correct that § 1287.6 applies only to "official documents."  <u>See</u> 8 C.F.R. § 1287.6 (stating that "an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized").[1]  Therefore, while this section may apply to the certificate of Zheng's neighbor's sterilization surgery, it does not appear to apply to the letter from Zheng's neighbor.  Zheng also argues that the BIA should not have relied on the IJ's original adverse credibility determination in denying her motion to reopen. The testimony Zheng presented in support of her previous asylum application pertained to evidence of past persecution and whether Zheng had a well-founded fear of future persecution.  In contrast, the relevant inquiry when considering an untimely motion to reopen is whether the petitioner has presented evidence of changed conditions in the country to which the petitioner will be removed.  <u>See</u> 8 U.S.C.

---

[1]Although Zheng asserts that the BIA relied on 8 C.F.R. § 287.6, the BIA actually cited 8 C.F.R. § 1287.6 in its opinion.  The language of these two sections, however, is identical, and the only meaningful distinction is that 8 C.F.R. § 287.6 applies to proceedings before an IJ, whereas 8 C.F.R. § 1287.6 applies to proceedings before the BIA.  <u>See</u> 8 C.F.R. §§ 287.6, 1287.6.

§ 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). Zheng did not present any testimony in support of her motion to reopen, but instead, submitted documentary evidence, which must be considered even if an adverse credibility determination has been made. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (holding that "an adverse credibility determination does not alleviate the [BIA's] duty to consider other evidence produced by an asylum applicant"). Thus, the BIA should not have rejected Zheng's documentary evidence of changed country conditions based on the IJ's previous adverse credibility determination.

Despite these potential errors, however, the BIA correctly found that Zheng's evidence was "inadequate to establish a change in circumstances or country conditions 'arising in the country of nationality.'" Although the facts in Zheng's case are similar to those in Li, the nature of the evidence presented in Li differed significantly from the evidence presented by Zheng. In contrast to the extensive evidence of changed country conditions presented in Li, Zheng's evidence does not establish that the Chinese government's manner of enforcing the one-child policy has worsened. The letter from Zheng's neighbor is anecdotal evidence of only one forced sterilization in Zheng's home province.[2] It does not

---

[2]We also note that, although the letter from Zheng's neighbor is dated December 12, 2007, the letter describes events that occurred in 2002 and early 2003 – before the IJ initially denied Zheng's asylum application on October 24, 2003. The certification of sterilization is dated April 7, 2003 and, therefore, also predated the IJ's initial denial of relief.

indicate how many individuals were forced to undergo this procedure or that local officials have recently increased enforcement of the family planning policy. The 2007 Country Report indicates that China's "birth limitation policies <u>retain</u> harshly coercive elements in law and in practice" and notes that parents with two children were "often pressured to undergo sterilization." However, the 2002 Country Report also indicates that "[d]raconian penalties sometimes left expecting mothers with little choice but to undergo abortion or sterilization." Thus, although the 2007 Country Report indicates that harsh family planning policies continue to be enforced in China, it does not lead to the conclusion that Chinese officials have increased enforcement of the policy since the IJ first denied Zheng's application. Finally, in contrast to the evidence presented in <u>Li</u>, Zheng failed to submit an affidavit attesting that officials in the Fujian Province have increased enforcement of the family planning policy. <u>See Li</u>, 488 F.3d at 1373. Although Zheng argues in her motion to reopen and her appellate brief that Chinese officials have increased enforcement of the family planning policy, the BIA correctly noted that these statements to not constitute "evidence." Accordingly, because Zheng's evidence failed to established changed conditions with respect to China's enforcement of its one-child policy, the BIA correctly denied Zheng's motion to reopen.

*Failure to Consider CAT Claim*

Zheng also argues that the BIA abused its discretion by failing to consider the merits of her CAT claim. However, the only way a petitioner may secure consideration of an untimely subsequent application for asylum, withholding of removal, and CAT relief, is to show changed conditions in the country of origin. See 8 U.S.C. §§ 1229a(c)(7)(A)-(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). As discussed above, Zheng failed to make this showing. Thus, the BIA did not abuse its discretion in failing to reach the merits of Zheng's CAT claim. See INS v. Bagamasbad, 429 U.S. 24, 25, 97 S.Ct. 200, 201, 50 L.Ed.2d 190 (1976) (noting that, "[a]s a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach"). Accordingly, the BIA correctly denied Zheng's motion to reopen and we deny Zheng's petition for review.

**PETITION DENIED.**