[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13260
_____

Agency No. A073-767-298

HUA HUI CHEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 16, 2012)

Before TJOFLAT, CARNES, and JORDAN, Circuit Judges.

PER CURIAM:

Hua Hui Chen, a native and citizen of China, seeks review of the Board of

Immigration Appeals' denial of her second motion to reopen her removal proceedings. Chen contends that the BIA abused its discretion in finding that she failed to show changed country conditions in China that would warrant reopening her removal proceedings.

I.

Chen, a native of Langqi Town in the Fujian Province, illegally entered the United States in 1994 and has since given birth to three children. An immigration judge ordered her removed in 2003, and the BIA affirmed that decision in 2004. In 2007 Chen filed a motion to reopen her removal proceedings based on changed conditions in China. The BIA denied that motion, finding that Chen failed to show a material change in the enforcement of the family planning policy in the Fujian Province.

On December 3, 2010, Chen filed a second motion to reopen her removal proceedings, contending that country conditions in China had changed since the BIA denied her 2007 motion to reopen. She argued that officials in the Fujian Province were more strictly enforcing China's one-child family planning policy and that she feared sterilization upon return to China because she has three children. She also argued that she was eligible for asylum and withholding of removal. In support of her second motion, Chen submitted 67 exhibits, many of

2

which pre-date her first motion to reopen in 2007.

The BIA denied Chen's second motion to reopen her removal proceedings, finding that she failed to show that the one-child policy is currently enforced more strictly in the Fujian Province than it was at the time of the original removal proceeding. Chen filed this petition for review.

## II.

"We review the BIA's denial of a motion to reopen removal proceedings for abuse of discretion." Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009) (alteration omitted). "[R]eview is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." Id.

An alien generally may file only one motion to reopen removal proceedings, and it must be filed no later than 90 days after the final administrative decision. 8 C.F.R. § 1003.23(b)(1). These limitations, however, do not apply when: (1) the motion to reopen seeks asylum, withholding of removal, or relief under the Convention Against Torture; (2) the motion is predicated on changed country conditions; and (3) the evidence of changed conditions is material and could not have been discovered or presented at the previous proceeding. Id. § 1003.23(b)(4)(i). Because motions to reopen removal proceedings are disfavored, the movant bears a heavy burden to present material evidence, which is evidence

3

that would likely change the result of the case if the proceedings were reopened.

Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256–57 (11th Cir. 2009).

The BIA may deny a motion to reopen based on: (1) a failure to establish a prima facie case of eligibility for asylum or withholding of removal; (2) a failure to introduce evidence that is material and was previously unavailable; or (3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion. Li v. U.S. Att'y Gen., 488 F.3d 1371, 1375 (11th Cir. 2007). In the present case the BIA based its decision on the second ground.

### III.

Chen argues that the BIA abused its discretion in denying her second motion to reopen because her evidence showed a material change in country conditions. She argues that the BIA should not have relied on the 2007 Department of State Country Report that she submitted with her second motion to reopen. The BIA, however, is entitled to rely heavily on State Department Reports to determine country conditions. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004). The 2007 Country Report states that although Consulate General officials in the Fujian Province found that public coercion has been used to enforce the family planning policy, they did not find any cases where

4

physical force was used in connection with abortion or sterilization. The report further notes that United States officials in China were not aware of any national or local policy that would require either the husband or the wife to be sterilized when a Chinese couple returns to China with foreign born children. Based on the contents of the Country Report, we cannot say that the BIA abused its discretion in relying on that report in finding that Chen had failed to show that the conditions had changed in the Fujian Province.

Chen also argues that the BIA abused its discretion in discounting as unpersuasive a 2009 report authored by Dr. Flora Sapio, which criticized the 2007 Country Report. The BIA, however, was not required to accept Dr. Sapio's opinion over the Department of State's Country Report. Id. In any event, Dr. Sapio's opinion does not support Chen's claim that there has been an increase in forced sterilization in the Fujian Province. Her opinion was that there is no consensus about whether forced sterilization and abortions are now used to implement China's family planning policy. The BIA did not abuse its discretion by discounting the persuasive value of Dr. Sapio's report.

Chen next contends that the BIA abused its discretion by failing to properly consider the record in three ways. First, she argues that it ignored official

5

documents from China that were not authenticated.[1]  That was not an abuse of

discretion, however, because official documents are required to be authenticated in

BIA proceedings,  8 C.F.R. § 1287.6(c)(1), and we have held that

"[u]nauthenticated documents lack veracity and are entitled to no deference,"

Chen v. U.S. Att'y Gen., 672 F.3d 961, 964 (11th Cir. 2011).   In any event, the

BIA did not ignore the unauthenticated official documents that Chen submitted.  It

mentioned all of them later in its decision, indicating that it considered them as

evidence but chose to give that evidence little or no weight.[2]

---

[1] Of her 67 exhibits, the unauthenticated official documents were Exhibits A, B, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, and FF.

[2] The BIA listed the following official documents in its decision: the Nationality Law of the People's Republic of China; the 1958 Household Registration Regulations of the People's Republic of China; Answers to People's Visits and Letters Regarding Birth Policy Issues for Chinese Staying Abroad; the Ying Qian Town Q&A Handbook; the Q&A Handbook from the Family Planning Office of Langqi Town; inquiries and responses from the Fuzhou Call Center for the Convenience of the People, the Beautiful Family website, and the Fujian Province Population and Family Planning Committee; regulations from the Population and Family Planning Bureau of Cangshan District, the Fuqing Municipal People's Government, the Population and Family Planning Bureau of Xiuyu District, the People's Government of Xiang An, Luanfeng Township, the People's Government of Nanyang Town, Sha County, the National Territory Resources Bureau of Zhangpu County, Guantou Township, Ying Qian Town, and Quanzhou City Rural Area; documents that purport to be from the Chang Le City Population and Family Planning Leadership Group, the Chinese Community Party Chang Le City Shou Zhan Township Committee, and the Shou Zhan Township Population and Family Planning Leadership Group; and correspondence from the Fujian Province Population and Family Planning Commission.  After discussing the relevant law, the BIA found that "[t]he evidence indicates that social compensation fees, job loss or demotion, loss of promotion opportunity, expulsion from the party, destruction of property, and other administrative punishments are used to enforce the family planning policy. . . . It reflects that China regards a child of Chinese nationals who have not permanently settled in another country as a Chinese national, but is not sufficient to demonstrate that the respondent will face forcible sterilization."

6

Second, Chen argues that the BIA failed to consider other evidence in the record by ignoring unofficial evidence that was not authenticated, including a letter from one Chinese citizen and an affidavit from another who both claimed that they were sterilized after returning to China with two foreign-born children, and a statement by a third Chinese citizen who was granted asylum in 2008 based on a fear of sterilization if forced to return to China. Because there is no authentication requirement for unofficial documents, the BIA may not refuse to consider these documents at all solely because they are unauthenticated. Cf. 8 C.F.R. § 1287.6(c)(1) (requiring official documents to be authenticated). That is not, however, what the BIA did in this case. Instead, it stated: "The respondent's evidence from persons in China unrelated to her has not been authenticated, and she has not shown that the circumstances in their cases are the same as the circumstances in her case. See Supplemental Exhibits C, D, GG, BBB, GGG, HHH, III, KKK." [3] The BIA, therefore, did not refuse to consider the

_____

[3] The 8 exhibits listed by the BIA are the only exhibits in the record pertaining to people in China who are not related to Chen, and both of the BIA's reasons for discounting the evidence apply to all of those exhibits: they are all unauthenticated, and they all involve people who are not from the same town in the Fujian Province as Chen. Choosing not to give much evidentiary weight to exhibits because they are unauthenticated and because they do not involve Chen's hometown is not the same as ignoring the exhibits. The BIA, under its own precedents, may give limited weight to evidence from different towns in the same province. See In re S-Y-G, 24 I. & N. Dec. 247, 258 (BIA 2007) (finding that because of the "localized nature of family planning enforcement," documents on family planning enforcement in different localities or provinces are not as helpful as documents relating to the petitioner's hometown because they shed no light on

7

unauthenticated unofficial exhibits evidence altogether, but instead chose to give that evidence little or no weight because it was unauthenticated and involved people who were not similarly situated to Chen.

Third, Chen contends that the BIA improperly considered the evidence by ignoring some of her exhibits because they were "incomplete." The BIA did note that some of Chen's exhibits were incomplete, but there is no indication that it refused to consider any of them for that reason alone. We will not assume that the BIA failed to consider certain reports and transcripts just because it did not discuss each one in its decision. The BIA is not required to specifically address every piece of evidence presented to it "[w]here [it] has given reasoned consideration to the petition, and made adequate findings." Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1364 (11th Cir. 2011) (internal quotation marks omitted). That is especially true in a case like this, where Chen submitted to the BIA 67 exhibits, many with subparts.

**PETITION DENIED.**[4]

_____

its policy).

[4]Because we hold that the BIA did not abuse its discretion in finding that Chen failed to show changed country conditions in China that would warrant reopening her removal proceedings, we do not reach the merits of her claim that she is prima facie eligible for asylum and withholding of removal relief. See Chen v. U.S. Att'y Gen., 565 F.3d 805, 810 (11th Cir. 2009) (holding that an alien cannot file a successive asylum application except as part of a properly filed motion to reopen).