[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12437
Non-Argument Calendar
_____

Agency No. A088-777-138


HANGMIN CAI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 29, 2014)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Hangmin Cai, proceeding through counsel, petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of her application for asylum pursuant to the Immigration and Nationality Act ("INA"), § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).

Cai is a native and citizen of the People's Republic of China and comes from Chang Le, Fujian Province. She entered the United States in October 1998 without being paroled or inspected. In May 2008, Cai was issued a notice to appear, charging that she was subject to removal under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). Cai has three children, all born in the United States, and, in February 2011, she converted to Christianity. Cai requested asylum, withholding of removal, and CAT relief because she feared persecution in the form of forcible sterilization or excessive fines due to her violation of China's family planning policies. She also feared persecution based upon her Christian faith and her intent to join an underground Christian church if returned to China.

The IJ determined that Cai was ineligible for asylum because she had not shown a reasonable possibility that she would face persecution on account of her violation of China's family planning policies or due to her religion if returned to

2

China.  As to her fear of forced sterilization, the IJ concluded that her claim that she would suffer persecution in China on account of giving birth to three children in the United States lacked sufficient evidentiary support.  Specifically, the IJ pointed out that Cai had produced no evidence that someone similarly situated (*i.e.*, someone who had given birth to children in the United States and then returned to China) had suffered forcible sterilization or other persecution.  Rather, Cai's evidence (1) concerned persons who had violated China's family planning policies by having more than one child in China; (2) came from interested family members or individuals whom Cai had never met, who did not testify during her immigration proceedings; and (3) was largely written years before Cai's immigration proceedings.  Additionally, the IJ concluded that the U.S. State Department Country Reports and other documentary evidence showed that officials in her home province of Fujian were not particularly likely to forcibly sterilize a returning Chinese national with unauthorized children born abroad.

As to Cai's fear of excessive fines, the IJ concluded that Cai might face a fine of up to ¥50,000, but she had not provided any evidence that such a fine would cause her to suffer economic difficulties above those generally shared by others in China.  As to Cai's Christian faith claim, the IJ concluded that Cai had not demonstrated that there was a good reason she would be singled out for her persecution and had not shown a pattern or practice of persecution of Christians in

3

China.  The IJ further concluded that, because Cai had failed to meet the lower standard for asylum, she was ineligible for withholding of removal or CAT relief.

The BIA affirmed the IJ's decision.  First, the BIA found that the IJ's conclusion that Cai did not face a reasonable possibility of forced sterilization, excessive fines, or other persecution upon returning to China for violating China's one child policy was not clearly erroneous.  Addressing specific pieces of evidence in detail (including a letter from Cai's cousin, who claimed to have been forcibly sterilized and fined after giving birth to her second child in China) the BIA determined that much of the evidence that Cai offered in support of her position was entitled to little weight.  Like the IJ, the BIA focused on the fact that Cai's evidence concerned persons who had violated China's family planning policies by having more than one child in China, rather than those who had United States-born children.  The BIA also noted that U.S. State Department Country Reports and Annual Reports from the Executive Commission on China worked against Cai because they showed that forcible sterilization was prohibited.  The BIA concluded that, to the extent forcible sterilization occurred, no evidence suggested that it was used against individuals who gave birth to children in the United States.  Moreover, the BIA determined that much of Cai's evidence did not speak to current conditions in China or relate to population control policies in Fujian Province.  The BIA also concluded that Cai's claim based upon her fear of fines

4

did not rise to the level of persecution because (1) the Country Reports showed that couples unable to pay fines immediately had been allowed to pay in installments, and (2) Cai had not shown that she would be unable to pay the fines. As to her claim related to her Christian faith, the BIA noted that her evidence was of little probative value because converting to Christianity and attending church services in the United States did little to suggest that the Chinese authorities would likely become aware of her continued religious practice once she returned. The BIA also concluded that, because Cai had failed to meet the lower standard for asylum, she was ineligible for withholding of removal, and that she was ineligible for CAT relief because none of her evidence demonstrated that she would more likely than not face torture.

On appeal here, Cai argues that the BIA improperly reweighed evidence by making its own observations, rather than relying on those of the IJ. She also argues that the BIA erred in discounting her cousin's letter based upon an arbitrary distinction between children born in the United States versus those born in China in violation of China's family planning policies. Cai maintains that the BIA's distinction fell afoul of our decision in *Li v. U.S. Att'y Gen.*, 488 F.3d 1371 (11th Cir. 2007). Cai also claims that the BIA erred in concluding that she had failed to show a reasonable possibility that she would face persecution based upon her Christian faith if returned to China.

We only review the BIA's decision, except to the extent that it expressly adopts the IJ's opinion or reasoning. *Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307 (11th Cir. 2013). Where the BIA has issued its own opinion and relied upon the IJ's decision and reasoning without expressly adopting the IJ's opinion, we review the IJ's opinion to the extent the BIA found that IJ's reasons were supported by the record. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).

We review legal questions *de novo*. *Zhu*, 703 F.3d at 1307. We review factual determinations under the substantial evidence test, and thus "must affirm if the BIA's decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). Under that standard, we view the evidence in the light most favorable to the BIA's decision, draw all reasonable inferences in favor of the BIA's decision, and must affirm the BIA's decision unless the record compels reversal. *Seck*, 663 F.3d at 1364.

An alien who is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The government has the discretion to grant asylum if the alien establishes that he is a "refugee." *See* INA § 208(b)(1), 8 U.S.C. § 1158(b)(1)(A). The INA defines a "refugee" as, among other things, (1) "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program," and

6

(2) "any person who is outside of [the] country of [her] nationality . . . and who is unable or unwilling to return to . . . that country because of . . . a well-founded fear of persecution on account of . . . religion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving refugee status. *Zheng v. U.S. Att'y. Gen.*, 451 F.3d 1287, 1290 (11th Cir. 2006). Generally, an applicant for asylum must establish either: (1) past persecution on account of a protected ground; or (2) a well-founded fear of future persecution on account of a protected ground. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005). We have explained that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotation omitted).

An applicant can establish a well-founded fear of future persecution, for purposes of asylum, by showing a fear based upon a reasonable possibility of future persecution on account of a protected ground, that is both "subjectively genuine and objectively reasonable." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009). "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." *De Santamaria*, 525 F.3d at 1007 (quotation omitted). "The objective prong can be

7

fulfilled by establishing that the applicant has a good reason to fear future persecution." *Id.* (quotation omitted).

The well-founded fear of future persecution is thus a mixed question of law and fact. *See Zhu*, 703 F.3d at 1311-12. The factual prong involves "determining what has happened to the petitioner in the past and what would occur to the petitioner upon returning to his or her native country." *Id.* at 1312. The legal prong involves "deciding whether what has occurred and what will occur suffice to meet the legal standard for a well-founded fear of persecution." *Id.* "To the extent the BIA has the ability to reweigh evidence, this power is limited to reviewing the evidence before the IJ and reviewing it *through the prism of clear error review*." *Id.* at 1315 (emphasis in original).

In *Li v. U.S. Att'y Gen.*, the petitioner sought to reopen her removal proceedings after having been denied asylum because she gave birth to two children in the United States and feared that she would face forcible sterilization if returned to China. *See Li*, 488 F.3d at 1372-73. The BIA denied her motion to reopen after determining, among other things, that the petitioner had failed to establish a policy of persecuting women with foreign-born children, as opposed to native children. *Id.* at 1376. We rejected the BIA's distinction, explaining that the BIA "assumed that [the petitioner's] alleged persecutors would make a similar distinction" even though no evidence in the record showed that government

8

officials would make such a distinction. *See id.* We determined that the BIA's reliance on that factual distinction to conclude that the petitioner failed to make out a *prima facie* case for asylum was "arbitrary and capricious" on that record. *Id.*

To qualify for withholding of removal, an applicant must establish that her life or freedom would be threatened in her country of origin on account of a statutorily protected ground. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The applicant must demonstrate that she would more likely than not be persecuted upon being returned to her country of origin. *Sepulveda*, 401 F.3d at 1232. To qualify for CAT relief, the petitioner must show that it is "more likely than not" that she would be tortured "at the instigation of or with the consent or acquiescence of" government authorities if removed to her home country. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (quotations omitted). An applicant who is unable to satisfy the standard for asylum generally will be unable to meet the more stringent standards for withholding of removal and CAT relief. *Sepulveda*, 401 F.3d at 1232-33; *Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007).

Contrary to Cai's assertion, the BIA did not engage in impermissible reweighing of evidence, but rather reviewed the evidence that was before the IJ through the prism of clear error. *See Zhu*, 703 F.3d at 1315. Cai's claim that the BIA's discounting of her cousin's letter fell afoul of *Li* is unpersuasive because,

9

even if so, the BIA also noted that the letter's author was an interested witness not subject to cross examination as a reason for giving it little weight.  In any event, here, unlike in *Li*, record evidence supports the BIA's native-born child versus foreign-born child distinction.  Specifically, a 2006 correspondence from the Fujian Province Population and Family Planning Commission to the United States General Consulate states that a U.S.-born child by a resident of China would not be counted for family planning purposes if the child's permanent residency is not established when the child returns to China.  *See Li*, 488 F.3d at 1376.

In addition to the 2006 Fujian Province Population and Family Planning Commission correspondence, other substantial evidence in the record supports the BIA's and IJ's determinations that Cai failed to show a reasonable possibility that she would face forced sterilization if returned to China.  *See Zhu*, 703 F.3d at 1307. Specifically, there is evidence in the record that (1) the Chinese government prohibited use of force to compel sterilization; and (2) forced sterilization occurred, but only in some instances and under intense pressure to meet family planning goals.  Substantial evidence also supports the BIA's and IJ's conclusions that Cai had not shown a reasonable possibility of persecution in the form of excessive fines because Cai offered no evidence that a fine of any particular amount would cause her severe economic damage.  Therefore, even assuming Cai proved she faced a reasonable possibility of a fine, the BIA properly concluded

that she did not show that any such fine would rise to the level of persecution.  *See Sepulveda*, 401 F.3d at 1231.

The BIA's and IJ's determinations as to Cai's claim based on her Christian faith are, likewise, supported by substantial evidence.  *See Zhu*, 703 F.3d at 1307. The U.S. State Department Country Reports show that the Chinese government's treatment of underground church members varies regionally, and Cai provided no evidence of persecution of underground church members in her local region, or any evidence that the Chinese government was aware of her Christian faith.  As Cai did not meet the lower standard for asylum as to any of her claims—*i.e.*, a reasonable possibility of future persecution based on her violation of China's family planning policy or her Christian faith—substantial evidence supports the BIA's determination that Cai failed to establish eligibility for withholding of removal and CAT relief.  *See Sepulveda*, 401 F.3d at 1232-33; *Morales*, 488 F.3d at 891. Accordingly, we deny her petition for review.

**PETITION DENIED.**