[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11339
Non-Argument Calendar

_____

Agency No. A077-618-801

WEN XIU JIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 16, 2009)

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

Wen Xiu Jiang, a native and citizen of China, petitions for review of the

Board of Immigration Appeals's ("BIA's") order denying his untimely motion to reopen, 8 C.F.R. § 1003.2(a). Jiang argues that the BIA abused its discretion in denying his motion to reopen because he demonstrated changed country conditions in China. He further argues that the BIA abused its discretion in discounting the evidentiary value of an announcement from his village committee indicating that he would be subject to sanctions under China's family planning policy if he returned to China. Finally, Jiang contends that the BIA violated his due process rights by disregarding certain background documents and failing to consider the extent to which his case was distinguishable from one it had considered in a previous decision.

## I.

Jiang entered the United States on or about August 12, 1999. The Immigration and Naturalization Service ("INS") served him with a notice to appear, charging him with removability as an alien who entered the United States without proper documentation, in violation of INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). In November 1999, Jiang filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), alleging persecution on account of his religious beliefs.

The record in this proceeding included the U.S. State Department's Country Report on Human Rights Practices in China ("country report") for 1998. The 1998

country report noted that the government "continued" to implement its family planning policy, whereby couples were permitted to have only one child unless certain exceptions applied. In addition, the report noted that, after a couple had two children, one of them was required to undergo sterilization. Those who violated the family planning policy were subject to "formidable" fines. While government policy forbade the use of force to compel an individual to undergo sterilization, there were documented instances of government officials forcing citizens to undergo sterilization, particularly in the Fujian Province.

In 1999, the Immigration Judge ("IJ") conducted an asylum hearing, after which she denied Jiang's application for relief and ordered him removed to China. Jiang appealed to the BIA, and in 2002, the BIA affirmed the IJ's decision.

In August 2008, Jiang filed the present motion to reopen proceedings based on changed country conditions. In his motion, Jiang explained that he had married another Chinese citizen, Hai Ying Wang, in New York during February 2008. Wang was a permanent resident of the United States. In 2004, the couple had their first son, and in January 2008, the couple had their second son. Jiang contended that these births violated Chinese family planning policies because: (1) their children were born outside of marriage; (2) couples were not permitted to have a second child if their first child was a boy; (3) each son was born without a birth permit; and (4) regardless of a child's gender, couples were not permitted to have

3

more than two children and, as a result, either Jiang or Wang would be forced to undergo sterilization if they returned to China.

Jiang supported his motion to reopen with exhibits. These exhibits included his sons' birth certificates. He also included his own affidavit, in which he averred that he was from LianJiang County, Fuzhou City, which was within the Fujian Province and was an agricultural area. He further averred that his father had asked his village committee how they would react if Jiang returned to China with two sons who were born in the United States, and the committee responded that Jiang and his children were considered to be Chinese nationals for purposes of the family planning policy. Thus, he was considered to have violated the policy, and would be subject to fines and sterilization upon his return to China.

Jiang also included a document from his village committee entitled "Announcement," which was addressed to him and dated June 16, 2008. The document noted that Jiang had "severely" violated the family planning policy, and instructed Jiang to report to family planning officials upon his return to China so that he could be sterilized and pay a fine.

In addition to his own affidavit, Jiang submitted Wang's affidavit. In her affidavit, Wang averred that her husband was a Chinese national and would be sterilized if he returned to China because they had two sons. She explained that it was likely that the Chinese government would force Jiang, rather than herself, to

4

undergo sterilization because she was a permanent resident of the United States. Jiang also included a statement from his parents, in which they stated that Jiang was subject to fines and sterilization for his violation of the family planning policy. They further explained that they had obtained the announcement from the village committee and mailed it to Jiang. In their affidavits and statements, Jiang, Wang, and Jiang's parents did not state or indicate that local officials had changed or increased their enforcement of the family planning policy in Jiang's area since his last removal hearing in 1999.

Jiang's exhibits also included statements from his brother's wife, three of his female cousins, and the wife of one of his male cousins. In their statements, each of these women explained that the Chinese government had forcibly sterilized them after they gave birth to a second child. Jiang's brother's wife had been forcibly sterilized in 2003. His cousins had been forcibly sterilized in 2000, 1998, and 2007, respectively. The wife of one of Jiang's male cousins was forcibly sterilized in 2006. One of Jiang's female cousins stated that "the family planning policy has not been changed for more than ten years." Her statement was dated April 17, 2008. In their statements, none of these women indicated that the enforcement of China's family planning policy had recently changed or increased in their area.

5

Jiang further supported his motion to reopen with background documents concerning China's family planning policy. One of these documents was entitled "Fuzhou City's Enforcement of the 'Fujian Province Family Planning Regulations,'" which was dated 1989. In this document, the Fuzhou City local government announced that couples from agricultural villages could have only one child. Couples whose first child was a girl could apply for governmental permission to have a second child. They were required, however, to wait four years after the birth of their first child before they had their second child. After a couple had their first child, an intrauterine device ("IUD") would be inserted into the woman. After a couple had their second child, either the male or the female was required to undergo sterilization. Women who became pregnant in violation of the family planning policy "should be forced" to have an abortion. The document noted that those who refused to comply with the birth control requirements were subject to "administrative and economical measures." One such measure was the deprivation of a couple's salary until they complied with the family planning policy. The Fuzhou City government stated that it intended that the family planning policy be "strictly enforced."

In addition, the record included a "Family Planning Information Handbook" for Fuzhou City, which was dated 1999. This document set forth the family planning policy consistently with the other documents of record, and noted that

6

couples were required to undergo sterilization after the birth of their second child, and were subject to fines if they violated the policy.

The record also contained copies of two 2003 administrative decisions from the Family Planning Administration for Changle City, which was within the Fujian Province. These decisions addressed the matter of Zheng Yu He, a Chinese national whose two children were born in the United States. These documents stated that he would be subject to sanctions under the family planning policy even though his children were born in the United States because he had not obtained permanent resident status abroad or authorization to live abroad for at least three years.

The record also included the 2006 and 2007 country reports for China. According to the 2006 country report, "The country's birth planning policies retained harshly coercive elements in law and practice." The report also noted, "Reports of forced sterilizations and abortions . . . . continued to be documented in rural areas. During the year officials . . . in Fujian Province reportedly forcibly sterilized women." The 2007 country report was consistent with the 2006 report. In addition to the information included in the 2006 report, however, it noted that the Fujian Province, along with nine other provinces, required unspecified "remedial measures" to deal with a pregnancy that violated the family planning policy.

7

In addition, Jiang submitted a 2001 report published by the INS, and a 2002 report published by the United Kingdom's Immigration and Nationality Directorate. Both of these reports indicated that sterilizations were widely enforced throughout China during the late 1990's. While the reports noted that some areas in the Fujian province only loosely enforced the family planning policy during the 1990's, they did not specifically indicate whether Jiang's area was among them.

Finally, the record also included the transcript of a 1998 hearing before the Committee on International Relations of the U.S. House of Representatives. At this hearing, Gao Xiao Duan, a former family planning official of Yonghe Town, which was in LianJiang County and the Fujian Province, testified that many women who were pregnant in violation of the family planning policy were forced to have abortions. In addition, Duan had personally handled several cases where women were subjected to sterilization after they had two children. Couples who violated the policy were also subject to steep fines. Harry Wu, the Executive Director of the Laogai Research Foundation, testified that, as of 1997, 75% of the adult women in Yonghe had been sterilized.

The BIA denied Jiang's motion, concluding that he did not demonstrate changed circumstances in China that warranted the reopening of his removal proceedings. In its decision, the BIA discounted the evidentiary value of the 2008

8

announcement addressed to Jiang from his village committee, noting that, among other things, this document had not been authenticated. The BIA reviewed Jiang's exhibits and background documents, and found that they did not demonstrate that forced sterilization was a recent pattern in Jiang's home village.

## II.

We review "the denial of a motion to reopen removal proceedings for abuse of discretion." Li v. U.S. Att'y Gen., 488 F.3d 1371, 1374 (11th Cir. 2007). This standard of review limits us "to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). However, "[t]o the extent that the decision of the Board was based on a legal determination, our review is de novo." Li, 488 F.3d at 1374.

A party may file only one motion to reopen removal proceedings, and that motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." INA § 240B(c)(7)(A), (B); 8 U.S.C. § 1229a(c)(7)(A), (B). Generally, a motion to reopen must be filed no later than 90 days after the final administrative decision. 8 C.F.R. § 1003.2(c)(2). However, the 90-day limit does not apply if the

9

motion to reopen is filed on the basis of changed circumstances in the country of the movant's nationality. INA § 240(c)(7)(C)(ii); 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). To meet this exception, a movant must show material evidence that was not available and could not have been discovered or presented at the previous hearing. Id. An alien cannot circumvent the requirement of changed country conditions by demonstrating only a change in his personal circumstances. Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009); see also Chen v. U.S. Att'y Gen., 565 F.3d 805, 809-10 (11th Cir. 2009). We have held that previously unavailable evidence of a recent campaign of forced sterilization in the petitioner's home province is sufficient to satisfy the changed circumstances requirement for an untimely motion to reopen. Li, 488 F.3d at 1374.

## III.

### *Denial of Jiang's Untimely Motion to Reopen*

As an initial matter, we assume for purposes of discussion that Jiang would be subject to the sanctions under China's family planning policy even though his children were born in the United States and his wife is a permanent resident of the United States. In addition, we assume that the fact that Jiang is male would have no effect on the chances that he would be subject to sterilization if he were returned to China. We also note that Jiang does not argue on appeal, and the record does not demonstrate, that Jiang's province has recently changed the

10

manner in which it applies the family planning policy to citizens whose children were born overseas.

While Jiang's argument that the BIA erroneously discounted the evidentiary value of the announcement from his village committee may have merit, the BIA did not abuse its discretion in denying his motion to reopen. In their affidavits and statements, Jiang, Wang, Jiang's parents, and Jiang's female relatives did not assert that local authorities had changed or increased their enforcement of the family planning policy in Jiang's area. In fact, one of Jiang's female cousins attested in her 2008 statement that "the family planning policy has not been changed for more than ten years." In addition, one of Jiang's cousins had been forced to undergo sterilization in 1998. This evidence distinguishes Jiang's case from our decision in Li because the petitioner in Li included statements in which her relatives attested that government officials in her area had recently increased their enforcement of the family planning policy.

Moreover, the numerous background documents that Jiang submitted into the record indicated that couples in the Fujian Province had been required to undergo sterilization and pay steep fines for violating the family planning policy since at least the late 1990's. Significantly, the 1998 country report provided that, after a couple had their second child, one of them was required to undergo sterilization, and couples were subject to "formidable" fines if they violated the

11

family planning policy. There were documented reports that, in the Fujian Province, government officials forced individuals to be sterilized. The 2006 and 2007 country reports did not indicate that these practices had changed or increased over time. Thus, while there was some evidence that, in certain areas, the family planning policy had been enforced more loosely during the 1990's than in recent years, there was also significant evidence that officials in the Fujian Province did not increase or change their enforcement of the policy between the time of Jiang's final administrative hearing in 1999 and the time he filed his motion to reopen.

Because the evidence largely demonstrates that local officials in Jiang's area have not recently changed or increased their enforcement of the family planning policy, Jiang failed to show changed country conditions that would warrant the reopening of his removal proceeding. Accordingly, we conclude that the BIA did not abuse its discretion in denying his untimely motion to reopen.

***Whether the BIA violated Jiang's due process rights***

Jiang also argues that the BIA violated his due process rights by disregarding certain background documents and failing to consider the extent to which his case was distinguishable from one it had considered in a previous decision. The background documents he refers to indicate that a Chinese citizen who has children born overseas is still subject to sanctions under the family planning policy upon his return to China. In the previous BIA decision Jiang refers

12

to, the BIA found that the petitioner would not be subject to sanctions under China's family planning policy because his children were born overseas.

We review constitutional challenges de novo." Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003).  The Fifth Amendment entitles petitioners in removal proceedings to due process of the law.  Frech v. U.S. Att'y Gen., 491 F.3d 1277, 1281 (11th Cir. 2007). "To prevail on a procedural due process challenge, the petitioner must show that he was substantially prejudiced by the violation." Id. An alien can demonstrate substantial prejudice by showing that, absent the due process violation, "the outcome would have been different."  Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir.1987).

Here, Jiang cannot demonstrate that he was prejudiced due to the BIA's alleged failure to distinguish his case from one of its previous decisions, or its alleged failure to consider the extent to which certain background documents support his claim.  As discussed above, Jiang failed to support his motion to reopen with evidence of changed country conditions.  Accordingly, even if we accept as true that he would be subject to sanctions under the family planning policy with children born in the United States, the denial of his motion to reopen was still appropriate.  Thus, even if these alleged errors had not occurred, the outcome of Jiang's proceeding would have been the same, and he cannot demonstrate prejudice.

13

## Conclusion

Based on our review of the record and the parties' briefs on appeal, we deny the petition.

**PETITION DENIED.**