FILED
United States Court of Appeals
Tenth Circuit

**February 25, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WU XIONG TAO,

        Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

        Respondent.

No. 08-9573
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

---

Petitioner Wu Xiong Tao, a native and citizen of the People's Republic of

China, seeks review of an order entered by the Board of Immigration Appeals

(BIA) affirming the Immigration Judge's (IJ) decision denying his application

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for asylum and restriction on removal (formerly known as withholding of removal) and ordering him removed to China.[1] Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition for review.

## Background

Mr. Tao was arrested for illegally entering the United States from Mexico in June 2005. After removal proceedings were commenced, Mr. Tao conceded removability and applied for asylum and restriction on removal. Mr. Tao alleges that he was persecuted by the government of China in two ways: (1) his wife, who still resides in China, was forced to undergo an abortion in September 2000 after Chinese family planning officials discovered she was pregnant with the couple's second child; and (2) he was arrested and imprisoned for a month in February 2005 for practicing Falun Gong, a religious practice the government of China outlawed in 1999.

### A. Mr. Tao's Hearing Testimony.

Mr. Tao testified regarding his alleged persecution in China at a merits hearing that was held before the IJ on May 14, 2007. As summarized in the brief that he has submitted to this court, Mr. Tao testified as follows:

> Tao married his wife on February 15, 1995 in China. In this marriage his wife gave birth to a daughter on February 17, 1997.

---

[1] Although Mr. Tao also sought relief under the United Nations Convention Against Torture (CAT), he has abandoned his CAT claim in this appeal, and it is therefore waived.

Subsequently, in March 1997, Tao's wife was forcibly inserted with an IUD insertion procedure, and additionally was required to attend regular gynecological checkups. . . . On September 26, 2000, when Tao's wife reported for her scheduled checkup at the local birth control office without knowing that she was in effect pregnant, she was found to be pregnant in the local family planning office. Subsequently, the local birth control officials detained Tao's wife and forced her to undergo an abortion procedure. . . .

In July 2004, a coworker of Tao . . . introduced . . . him [to] Falun Gong, saying that Falun Gong would help cultivate [his] mind and benefit [his] health. In February 2005, the same coworker called Tao and asked him to resume practicing Falun Gong. Tao went to the coworker's apartment, and . . . roughly about one hour after they started practicing, police came into the scene[.] The police ordered Tao and other Falun Gong fellows to squat . . . and handcuffed them one by one and took them to the police station. Tao testified that he was detained alone for a month. He was also questioned and beaten in the course of the detention. In the evening of the day of his release, a security guard secretly released him and asked him not to mention his name . . . . Tao then ran away to a friend's home. He called home, and learned from his mother that the guard was his father's friend. He said that after his escape the Chinese police searched his home from time to time until September 2006.

Aplt. Br. at 8-10.

In its response brief, the government has accurately summarized the inconsistencies and omissions in Mr. Tao's hearing testimony:

In contrast to his testimony before the Immigration Judge, Tao failed to mention his purported arrest [for practicing Falun Gong] on his I-217 form (information for travel document or passport). [The Border Patrol Agent] checked "no" in block 22 of the form, which inquires as to whether the alien has ever been "arrested, in prison or a public institution in the country of which [he is] a national, subject, or citizen." When asked about this omission, Tao replied that he had mentioned his arrest. However, as the Immigration Judge subsequently verified, Tao's I-217 contained otherwise accurate information regarding his family and background in China, including

-3-

the names of his mother (Lan Mei Zheng), father (Bin Wen), wife (Fhao Sho Ying Liu), and the nearest largest city to his birthplace (Fuzho).

Tao testified that he came to the United States because "some people from [his] hometown" had advised him that it was a "country of democracy and of human rights" and it would provide "freedom for religion." Tao was unable, however, to provide details regarding these people such as their names or where they lived. Instead, he vaguely testified that "it's my hometown fellow" and "they say the United States is good." He also testified that he was assisted in his trip to the United States by "snakeheads."

Tao testified that he traveled through Holland and Mexico en route to the United States. When questioned at the border, however, Tao stated, as indicated in his inadmissible alien report (I-213), that he had traveled through Singapore and Guatemala and then walked to Mexico. In response to this inconsistency, Tao testified that the report was "absolutely incorrect." The I-213 further indicated that Tao claimed he had entered the United States "to seek employment and for fear of persecution in his country because of his religious beliefs." Tao never mentioned China's family planning policy or his wife's alleged forced abortion in the course of his interview with the immigration officer. When asked why he had failed to mention his wife's forced abortion to immigration officials at the border, Tao replied that "the reason I didn't mention abortion is abortion will not result as a beaten up but practice Falun Gong . . . will result in beaten up by somebody." However, Tao later recanted this claim and instead asserted that he had, in fact, mentioned the family planning policy at the border.

Tao was unable to provide a document with a physician's diagnosis or report of his wife's abortion. He instead submitted an unauthenticated "abortion certificate." He also submitted an unauthenticated copy of his wife's IUD "Check Up Booklet."

Aplee. Br. at 6-8 (record citations and footnote omitted; third and fourth alteration in original).

-4-

**B. Immigration Judge's Decision.**

On September 28, 2007, the IJ entered a written decision denying Mr. Tao's application for asylum and restriction on removal. The IJ first found, based on "the totality of the evidence, all the relevant factors presented, and the entire record," A.R. at 70, that Mr. Tao's testimony regarding his wife's alleged forced abortion and his alleged imprisonment for practicing Falun Gong was not credible. Specifically, the IJ found that Mr. Tao's application and "other evidence submitted into the record reveal several minor and major omissions which taken together undermine [Mr. Tao's] credibility as to the veracity of the events which transpired and which [form] the basis of [his] claims." *Id.*

Among other deficiencies in Mr. Tao's testimony, the IJ noted the following: (1) although Mr. Tao testified that villagers from his home province had told him that he could live in a free society in the United States, he could not remember the names of any of the villagers or where they lived; (2) although the Form I-213 regarding Mr. Tao's border interview following his arrest indicated that he had traveled through Singapore and Guatemala to get to the United States, he testified that he had flown through the Netherlands and Mexico; (3) Mr. Tao did not mention his wife's alleged forced abortion during his border interview; and (4) the Form I-217 regarding Mr. Tao's border interview indicated that he told the Border Patrol Agent that he had never been arrested in China. *Id.* at 71.

-5-

The IJ further found that Mr. Tao had "failed to meet his burden of proof to show that he has suffered past persecution or that he has a well founded fear of future persecution in China on account of his religion or of his political opinion because he has failed to supply corroborating evidence, including authentication of the documentary proof that his wife purportedly suffered a forced abortion, as required by the regulations." *Id.* at 71-72 (citing 8 C.F.R. § 1287.6 with a parenthetical stating that it provides "that official foreign documents must be attested by a foreign official and must be certified by a U.S. State Department officer"). In support of this finding, the IJ noted that "counsel for [Mr. Tao] appeared for several hearings and was aware that the documents had not been authenticated, that it was [Mr. Tao's] burden to do so, and [counsel] has offered no explanation as to whether good faith efforts were in fact made to authenticate his documents." *Id.* at 72.

### C. Board of Immigration Appeals' Decision.

Mr. Tao appealed the IJ's decision to the BIA, and, on September 3, 2008, a single member of the BIA entered a brief order, pursuant to 8 C.F.R. § 1003.1(e)(5), dismissing Mr. Tao's appeal and affirming the IJ's decision. *See* A.R. at 5-7. On October 28, 2008, to correct a defect in the service of the September 3, 2008, order, the BIA vacated the order and issued a new order that incorporated by reference the text of the September 3, 2008, order. *Id.* at 1-4. For purposes of this appeal, we are therefore reviewing the brief order that was

entered on September 3, 2008, as incorporated in the BIA's October 28, 2008,

order.

In the brief order, the BIA affirmed the IJ's findings that Mr. Tao lacked

credibility and had failed to meet his burden of proof, stating that "the Board's

conclusions upon review of the record coincide with those the Immigration Judge

articulated in his . . . decision." *Id.* at 3 (quotation omitted).  But this was not a

summary affirmance in accordance with 8 C.F.R. § 1003.1(e)(5), as the BIA then

set forth a detailed and independent explanation of the reasons for the affirmance:

> The Immigration Judge describes several specific reasons to find
> [Mr. Tao] lacks credibility.  While [Mr. Tao] raises objections to
> some of these findings, overall they demonstrate a lack of credibility
> on the part of [Mr. Tao].  In particular, we note his argument that he
> did not mention his spouse's alleged forced abortion at the time of
> his arrest in the United States, as the primary basis for his claim is
> his practice of Falun Gong.  However, these same forms fail to
> mention that he was arrested and detained for 1 month due to his
> Falun Gong practice.  The forms simply note that the respondent was
> not arrested. . . .  While these discrepancies arise from the brief
> interviews conducted by border agents, we note that a great deal of
> personal information regarding [Mr. Tao] was recorded correctly.
>
> While these inconsistencies alone may not have been sufficient
> to support the Immigration Judge's credibility determination, they do
> clearly cast doubt on [Mr. Tao's] veracity.  Further, the Immigration
> Judge did engage in some speculation regarding [Mr. Tao's] ability
> to leave China under his own name, despite having escaped from
> prison and regarding why or if the Chinese government continued to
> search for [Mr. Tao] in China, despite being informed that he was in
> the United States.  *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1205
> (10th Cir. 2006) (stating that a finding that testimony is implausible
> may not be based upon speculation, conjecture, or unsupported
> personal opinion).  These anomalies may be explicable, but they,
> along with [Mr. Tao's] inability to recall the names of fellow

-7-

villagers, his generally vague testimony, and the discrepancies noted above, lead us to the conclusion that the Immigration Judge's adverse credibility finding is not clearly erroneous. . . .

Also, while corroborating evidence is not necessarily required of an applicant for asylum, here the testimony lacked credibility and [Mr. Tao] was provided ample time to obtain corroboration for his claim. . . . [Mr. Tao] has submitted little other support for his claim. [Mr. Tao] had almost 2 years to prepare for his hearing, his immediate family still lives in China, and the Immigration Judge cited specific documents that [Mr. Tao] could have been expected to produce or to have authenticated. . . . Given his lack of credibility and the lack of documentary support, [Mr. Tao's] appeal will be dismissed and the [the Immigration Judge's decision will be affirmed].

A.R. at 3-4.

## Analysis

### A. Standards of Review.

When reviewing a brief order entered by a single member of the BIA under 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision as the final order of removal but "consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). In addition, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* (quotation omitted).

While we review legal determinations de novo, our review of factual findings is governed by the substantial evidence standard. *See Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009). Thus, we must "look to the record

for 'substantial evidence' supporting the agency's decision: '[O]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.'" *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (alteration in original) (quoting *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004)). An alien who is seeking to overturn a factual finding at the circuit court level faces an uphill battle, however, because "[t]he agency's findings of fact are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)) (further quotation omitted).

"Credibility determinations are factual findings . . . subject to the substantial evidence test." *Uanreroro,* 443 F.3d at 1204. As a result, "we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001). But because an alien's testimony alone, if credible, may support an application for asylum or restriction on removal without corroboration, *see* 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1231(b)(3)(C); 8 C.F.R. §§ 208.13(a), 208.16(b), the IJ or BIA "must give specific, cogent reasons for disbelieving it." *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004) (quotation omitted). Further, an adverse credibility finding "may not be based upon speculation,

conjecture, or unsupported personal opinion." *Chaib v. Ashcroft*, 397 F.3d 1273, 1278 (10th Cir. 2005) (quotation omitted).

### B. Adverse Credibility Finding.

The BIA determined that the IJ's adverse credibility finding was not clearly erroneous, relying on the following factors: (1) the Form I-217 regarding Mr. Tao's border interview indicated that he told the Border Patrol Agent that he had never been arrested in China; (2) Mr. Tao failed to mention his wife's forced abortion during his border interview; (3) there were "anomalies" in Mr. Tao's hearing testimony concerning his "ability to leave China under his own name . . . and regarding why or if the Chinese government continued to search for [him] in China, despite being informed that he was in the United States"; (4) Mr. Tao was unable to recall the names of the "fellow villagers" who told him that he should seek asylum in the United States; and (5) Mr. Tao's testimony at the hearing before the IJ was "generally vague." A.R. at 3.

We conclude that, on the whole, the BIA's affirmance of the IJ's adverse credibility finding was substantially reasonable and that no reasonable adjudicator would be *compelled* to conclude to the contrary. We are persuaded that both the IJ's and the BIA's decisions are based on substantial evidence. The discrepancies between the information contained in the documents prepared in connection with Mr. Tao's border interview and his testimony at the hearing before the IJ support the IJ's adverse credibility finding and the BIA's affirmance.

As set forth above, the first discrepancy is the fact that the Form I-217 regarding Mr. Tao's border interview indicated that he told the Border Patrol Agent that he had never been arrested in China. The second discrepancy is the fact that Mr. Tao failed to mention his wife's alleged forced abortion during his border interview. Although Mr. Tao argues in this appeal that he has plausible explanations for these discrepancies and that the IJ and the BIA therefore erred in relying on them, *see* Aplt. Br. at 17-20, plausible explanations are not enough to reverse an adverse credibility determination. Instead, having been adjudged not credible in the administrative proceedings, Mr. Tao has the burden to point to evidence in the record showing that any reasonable adjudicator would be compelled to conclude to the contrary on the credibility issue, *see Uanreroro*, 443 F.3d at 1204, and he has failed to make such a showing.

(1) Beginning with the first discrepancy, we note at the outset that the IJ misstated the record on this point. Specifically, the IJ stated that Mr. Tao "admitted" at the hearing before the IJ "that he answered 'no' when giving an answer for Block 22 to the preparer of his Form I-217 Travel Document at the time of his arrest, indicating that he had never been arrested in China." A.R. at 57-58. To the contrary, however, as the government correctly notes in its response brief, Mr. Tao testified "that he <u>had</u> mentioned his arrest." Aplee. Br. at 6 (citing A.R. at 158). Although Mr. Tao did not assert a claim of error in his appeal to the BIA based on this misstatement of the record by the IJ, *see* A.R.

-11-

at 16-32, and thus failed to exhaust such a claim before the BIA, *see Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007), we conclude that the BIA nonetheless implicitly recognized and rejected Mr. Tao's explanation regarding the Form I-217 and therefore cured any error by the IJ. As the BIA explained:

> [The border interview] forms fail to mention that [Mr. Tao] was arrested and detained for 1 month due to his Falun Gong practice. The forms simply note that [Mr. Tao] was not arrested. . . . While [this] discrepanc[y] arise[s] from the brief interviews conducted by border agents, we note that a great deal of personal information regarding [Mr. Tao] was recorded correctly.

A.R. at 3. In other words, because the Form I-217 contained correct information regarding other matters, the BIA rejected Mr. Tao's claim in the brief that he submitted to the BIA that the interpreter at his border interview had "misunderstood him" regarding his arrest in China. *See* A.R. at 28.

We conclude that the BIA's decision on this point is substantially reasonable and that no reasonable adjudicator would be compelled to conclude to the contrary. As accurately summarized by the government in its response brief, "the Immigration Judge verified that several other details from Tao's I-217 form were accurate, including the names of his mother (Lan Mei Zheng), father (Bin Wen), wife (Fhao Sho Ying Liu), and the nearest largest city to his birthplace (Fuzho)." Aplee. Br. at 16. Moreover, we note that the Form I-217 accurately recorded Mr. Tao's claim that he had practiced Falun Gong in China. *See* A.R. at 203. As a result, we conclude that substantial evidence supports the BIA's

-12-

rejection of Mr. Tao's claim that the omission of his arrest was a translation error.

(2) With regard to the second discrepancy–the fact that Mr. Tao failed to mention his wife's alleged forced abortion during his border interview–Mr. Tao does not dispute that he failed to disclose the abortion to the Border Patrol Agent. Instead, as the BIA noted, Mr. Tao claims "that he did not mention his spouse's alleged forced abortion at the time of his arrest in the United States [because] the primary basis for his [persecution] claim is his practice of Falun Gong." *Id.* at 3. Although this is a plausible explanation, especially in light of Mr. Tao's testimony that he fled China within months of his alleged arrest for practicing Falun Gong, while the alleged forced abortion occurred several years earlier, it does not compel a contrary conclusion on the credibility issue concerning the abortion, as nothing in the administrative record precluded the IJ or the BIA from rejecting it. Thus, we see no error with regard to the adverse credibility finding on Mr. Tao's forced abortion claim.

(3) The other discrepancies go to the overall credibility of Mr. Tao. It is doubtful Mr. Tao would escape China based on the advice of people he did not trust. To testify that he could no longer identify the villagers with whom he discussed his plans, absent an articulated reason why he should not disclose their identities, seems unrealistic. The IJ could conclude this discrepancy contributed to the overall credibility assessment and the ultimate determination that Mr. Tao's testimony lacked credibility.

-13-

The BIA's observation about the vagueness of Mr. Tao's testimony also goes to Mr. Tao's overall credibility, as well as to what the IJ and BIA perceived to be a shifting story in support of Mr. Tao's claims.

In sum, the record as a whole supports the IJ's credibility determination.

## C. Authentication Issue.

The BIA also affirmed the IJ's finding that Mr. Tao had failed to submit sufficient corroborating documentary evidence to meet his burden of proof to establish a persecution claim. As the BIA explained, Mr. Tao "had almost 2 years to prepare for his hearing, his immediate family still lives in China, and the Immigration Judge cited specific documents that [Mr. Tao] could have been expected to produce or to have authenticated." *Id.* at 4. In his decision, the IJ relied on similar reasoning to support his finding that Mr. Tao had failed to submit sufficient documentary evidence to satisfy his burden of proof, as the IJ "note[d] that counsel for [Mr. Tao] appeared for several hearings and was aware that the documents had not been authenticated, that it was his burden to do so, and [counsel] has offered no explanation as to whether good faith efforts were in fact made to authenticate [Mr. Tao's] documents." *Id.* at 72.

The IJ also made a more specific finding to the effect that Mr. Tao had failed to submit authenticated "documentary proof that his wife purportedly suffered a forced abortion, as required by the [immigration] regulations." *Id.* (citing 8 C.F.R. § 1287.6). The regulation cited by the IJ was enacted in 2003,

and it is a duplicated version of 8 C.F.R. § 287.6. *See* 68 Fed. Reg. 9845 (Feb. 28, 2003). The specific reason for the duplication is not set forth in the Federal Register, however, and it appears that many courts refer only to § 287.6 when discussing authentication issues in immigration cases. *See, e.g., Jiang v. Gonzales*, 474 F.3d 25, 29 (1st Cir. 2007) (noting that 8 C.F.R. § 287.6(b) "provides a detailed procedure for the authentication of foreign official records for use in immigration proceedings"); *but see Zheng v. U.S. Att'y Gen.*, 2009 WL 2700165, at *4 n.1 (11th Cir. Aug. 28, 2009) (unpublished) (stating "that 8 C.F.R. § 287.6 applies to proceedings before an IJ, whereas 8 C.F.R. § 1287.6 applies to proceedings before the BIA"). To avoid confusion, because the original version of the regulation and the duplicated version are identical, we will likewise refer only to § 287.6.[2]

---

[2]     Both regulations provide, in pertinent part, as follows:

> In any [immigration] proceeding under this chapter, an official record or entry therein [from a foreign country], when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized. . . . The attested copy, with the additional foreign certificates if any, must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept.

8 C.F.R. §§ 287.6(b)(1)-(2), 1287.6(b)(1)-(2). Both regulations also contain separate procedural requirements for official records emanating from countries that are signatories to the "Convention Abolishing the Requirement of Legislation for Foreign Public Document." *Id.* at §§ 287.6(c), 1287.6(c). There is no indication in the administrative record that the latter provisions are applicable to

(continued...)

-15-

We agree with the IJ and the BIA that Mr. Tao failed to submit sufficient corroborating documentary evidence to meet his burden of proof to establish a persecution claim. In order to explain our holding, however, we must: (1) clarify several matters that relate to the authentication issue; and (2) summarize the extensive proceedings that took place in the immigration court pertaining to the authentication issue which, inexplicably, neither Mr. Tao nor the government have discussed in the briefs they have submitted to this court.

First, we note that Mr. Tao is not arguing in this appeal that the IJ and the BIA erred by failing to properly consider the documentary proof that he submitted to support his claim that he was imprisoned in China for practicing Falun Gong.[3] As a result, that aspect of Mr. Tao's persecution claim depends solely on the credibility issue discussed above, and we do not need to discuss it in connection with the authentication issue.

Second, contrary to the BIA's statement in its decision, our review of the administrative record indicates that the IJ never "cited specific documents that [Mr. Tao] could have been expected to produce." A.R. at 4. Instead, as set forth below, in the immigration court proceedings that took place before the merits

---

[2](...continued)
this case, however, and we will therefore assume that China is not a signatory to the specified convention.

[3]   The documentary proof consisted of purported letters from Mr. Tao and his wife discussing Mr. Tao's alleged imprisonment in February 2005 for practicing Falun Gong. *See* A.R. at 216, 221-22.

hearing, the IJ raised only an authentication issue, and he raised the

authentication issue with regard to just one of the documents submitted by

Mr. Tao. That document was the purported "abortion certificate" that Mr. Tao

submitted to support his claim that his wife was forced to have an abortion in

September 2000. *Id.* at 469 (Item No. 10), 514-15. Thus, there are no issues in

this appeal concerning whether Mr. Tao failed to produce or authenticate any

other documentary evidence.

Third, we note that, after raising the authentication issue, the IJ initially

assumed the responsibility for having the abortion certificate authenticated in

accordance with 8 C.F.R. § 287.6. Specifically, the administrative record shows

the following:

a. At a hearing held on March 22, 2006, the IJ told counsel for Mr. Tao
that he personally would send the abortion certificate to the United States State
Department "with a letter from [himself] asking them to authenticate [the abortion
certificate]." A.R. at 98. Counsel for Mr. Tao then stated that "[w]e'll appreciate
that, Your Honor, because [Mr. Tao] himself cannot have the abortion certificate
authenticated. The Chinese government won't do it for us." *Id.* at 99. The IJ
then set a hearing for July 26, 2006, stating that the purpose of the hearing would
be "[p]rimarily . . . to check on the status to see where we are with the documents
at issue." *Id.* at 101.

b. The IJ subsequently sent a letter dated April 12, 2006, to the United
States State Department. The letter stated as follows:

> Pursuant to 8 C.F.R. 287.6 which requires authentication of official
> records, counsel for the respondent has requested the authentication
> of the enclosed document by the U.S. Embassy in the People's
> Republic of China. We have narrowed the original list of documents
> for which authentication is being sought to one item: the purported
> abortion certificate issued to respondent's wife. As the verification

> of this document may be dispositive of this case, your assistance will be greatly appreciated.

*Id.* at 442.

c. At the hearing subsequently held on July 26, 2006, the IJ informed counsel for the parties that he had sent his April 12, 2006, letter to the State Department, but had not received a response to the letter. *Id.* at 106. The IJ stated that he would "give them a bit more time and . . . follow up with [an] email to State to see if they're making headway on this or what they think the prospects are [they're] going to be able to do something for us." *Id.* The IJ then set another hearing for September 27, 2006.

d. At the hearing on September 27, 2006, the IJ informed counsel for the parties that he still had not heard back from the State Department in response to his April 12, 2006, letter. *Id.* at 109-10. The IJ stated that he would "send an email this afternoon up to State and give this thing a little push." *Id.* at 111. The IJ also set another hearing for December 26, 2006.

e. The next hearing before the IJ was held on December 18, 2006. At that hearing, the IJ informed counsel for the parties that he still had not heard back from the State Department regarding the abortion certificate. *Id.* at 114. The IJ stated that it would be necessary to go ahead and set the matter for a merits hearing. *Id.* The IJ then scheduled a merits hearing before another IJ since he was retiring.

Fourth, the merits hearing was conducted before the second IJ on May 14, 2007. At the conclusion of the hearing, the second IJ noted that "authentication of the abortion certificate" was still an "issue," *id.* at 191, and he stated that "[t]hat's really a respondent's burden," *id.* After counsel for the government pointed out that the first IJ "took it on himself to try to get" the abortion certificate authenticated, *id.* at 193, the second IJ responded: "I'm not going to do that because that's not my job to do that," *id.* Following a discussion of other

matters, the second IJ then concluded the merits hearing with the following

statement:

> This case is continued until August 13 at 2:30, 2007. We'll wait to
> see what the abortion certificate, the outcome of the authentication
> is. We're going to allow counsel (indiscernible) telephonically that
> day. There's no reason for her to return.
>
> Let's let the respondent know we're going to give him three
> more months to see whether or not the abortion certificate was
> authentic or not authentic.

*Id.* at 199. The second IJ then had the following exchange with counsel for

Mr. Tao and he also made a statement for the record about the authentication

issue:

> JUDGE TO MS. LI
>
> Q. All right. Ms. Li has the original of the abortion
> certificate. I'm not sure there's a way to expedite the process or not.
> You're experienced in this because you have a lot of cases back in
> New York, I think, if I remember right.
>
> A. That's right, Your Honor.
>
> JUDGE FOR THE RECORD
>
> And let's see if we can't get [either] a thumbs up or a thumbs
> down of whatever it's going to be so that we can make a decision
> based on the authenticity . . . .

*Id.*

Finally, although the administrative record shows that a follow-up hearing

before the second IJ was in fact scheduled for August 13, 2007, *id.* at 523-24, and

subsequently rescheduled for August 20, 2007, *id.* at 522, there is no indication in

the administrative record that a follow-up hearing actually took place in August 2007 or at any time prior to September 28, 2007, when the second IJ issued his written decision. Instead, according to the administrative record, *id.* at 413-19, the only additional thing that happened after the merits hearing pertaining to the authentication issue is that on June 27, 2007, Mr. Tao's counsel submitted the following additional documents to the immigration court: (1) a purported letter from Mr. Tao's wife (who still resides in China) stating that she had attempted on May 31, 2007, to have the abortion certificate authenticated by Chinese government officials, but they had refused to authenticate the document, *id.* at 414; and (2) an unauthenticated "Certificate of Donghu Town Family Planning Office" that purported to certify that Mr. Tao's wife "having pregnancy by violating policy, was given an abortion at Donghu Town Hospital on September 28, 2000," *id.* at 418. Neither the second IJ nor the BIA referred to either of these documents in their decisions, however.

As noted above, Mr. Tao's counsel in this appeal (he was represented by a different attorney in the administrative proceedings below) has not referred to any of the above-described proceedings involving the abortion certificate in the brief that he has submitted to this court. Likewise, counsel has not referred to the additional documents that were submitted to the immigration court after the merits hearing. Instead, Mr. Tao's counsel simply argues in conclusory fashion that "the IJ . . . unreasonabl[y] imposed a requirement for authentication [in]

Tao's case without considering any alternative mean[s] to establish[] the authenticity of the supporting documents." Aplt. Br. at 20. In support of this argument, Mr. Tao's counsel then goes on to correctly note that "one Court has held, in the context of [an] asylum case, that an IJ may not dismiss evidence based merely on an applicant's 'failure to authenticate it pursuant to [§ 287.6].'" *Id.* at 21 (quoting *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 405 (2d Cir. 2005) (second alteration in original)). According to Mr. Tao's counsel, "[t]his rule . . . derives from the recognition that asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor and, therefore, the BIA's authentication regulation is not the exclusive means of authenticating record[s] before an immigration judge." *Id.* (quotation and citation omitted); *see also Yan v. Gonzales*, 438 F.3d 1249, 1256 n.7 (10th Cir. 2006) (noting that "[s]ince [the authentication procedures described in 8 C.F.R. § 287.6] generally require attestation of documents by the very government the alien is seeking to escape, courts generally do not view the alien's failure to obtain authentication as requiring the rejection of a document") (citing *Cao He Lin*, 428 F.3d at 404) (emphasis omitted)); *Jiang*, 474 F.3d at 29 (concluding that it was error for an IJ to "reject[] . . . documents *solely* because they were not authenticated in strict conformity with [8 C.F.R. § 287.6]"); *Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001) (noting that "[d]ocuments may be authenticated in immigration proceedings through any recognized procedure" and

-21-

that "[t]he procedure specified in 8 C.F.R. § 287.6 provides one, but not the exclusive, method" of authentication in immigration proceedings) (quotations omitted)).

Regardless of how the circuit courts have applied the authentication requirement in 8 C.F.R. § 287.6, however, we conclude that the second IJ and the BIA acted correctly in refusing to consider the purported abortion certificate as competent evidence to support Mr. Tao's persecution claim. Most importantly, as set forth above, at the conclusion of the merits hearing, the second IJ granted Mr. Tao an additional three months "to see whether or not the abortion certificate was authentic or not authentic," A.R. at 199, and a follow-up hearing was scheduled to further explore the authentication issue. For reasons that are not clear, however, the follow-up hearing never took place, and there is no indication in the administrative record that Mr. Tao's counsel made any efforts during the three-month period or thereafter to utilize the authentication procedure in 8 C.F.R § 287.6 or to propose an alternative procedure. To the contrary, based on the record before us, it appears that Mr. Tao's counsel did nothing except submit the purported letter from Mr. Tao's wife and the alleged family planning certificate to the immigration court in June 2007, but those documents were likewise never authenticated and were thus of little or no use.

In short, this is not a case where an alien has made a specific evidentiary showing that he was unable to comply with the requirements of § 287.6 due to a

lack of cooperation by government officials, either in this country or a foreign country. *Cf. Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 530, 531-33 (3d Cir. 2004) (holding that two aliens from China should have been allowed to prove the authenticity of two abortion certificates through means other than § 287.6 where counsel for the aliens made a specific evidentiary showing that "attempts to abide by the requirements of § 287.6 failed due to lack of cooperation from government officials in [China]"). Having reviewed the issue de novo as a legal matter, we therefore see no error pertaining to the authentication issue.

## Conclusion

The petition for review is DENIED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge